**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

**BRIAN PARKER,**

       **Plaintiff,**

**v.**                                                              **3:12-CV-04297-L-BK**

**U.S. BANK NATIONAL ASS'N.,
as Trustee, Successor-in Interest to
Wachovia Bank, NA, Asset Backed
Pass Through Certificates Series
2004-22F1 formerly known as First
Union National Bank, and AMERICA'S
SERVICING CO.,**

       **Defendants.**

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to the District Judge's *Order of Reference*, this case has been referred to the undersigned for pretrial management.  (Doc. 18).  The cause is now before the Court on Defendants' *Motion for Summary Judgment* (Doc. 16).  For the reasons that follow, it is recommended that Defendants' motion be **GRANTED**.

## I.  PROCEDURAL BACKGROUND

In September 2012, Plaintiff brought this action in state court against Defendants in connection with the anticipated foreclosure of his home.  He alleges that in September 2004, he executed a home equity Note, which was secured by a Deed on his home, in favor of his mortgage lender Argent Mortgage Company ("Argent").  (Doc. 1-5 at 2).  Plaintiff contends that, shortly thereafter, Argent assigned only the Deed to Ameriquest Mortgage Company ("Ameriquest"), and Ameriquest, acting through attorney-in-fact Citi Residential Lending, Inc., then assigned the Deed to Defendant U.S. Bank, N.A. ("U.S. Bank").  *Id.* at 2-3.  He claims that

the true owner of Plaintiff's Note and homestead, however, is U.S. Bank's depositor – Park Place Securities, Inc., Asset-Backed Pass-Through Certificates Series 2004-WWF1 ("the Park Place Trust"). *Id.* at 4. Plaintiff avers that the Park Place Trust is an asset-backed trust that is governed by its trust documents, particularly its "pooling and servicing agreement" ("PSA") and, like all asset-backed trusts, had a closing date by which its assets must be acquired. *Id.* at 4-5. He contends that the Park Place Trust's closing date was in November 2004, and the purported acquisition of his Note in September 2011 by the Trust was untimely and thus void. *Id.* at 5-7. Plaintiff seeks a declaratory judgment to the effect that Defendants could not foreclose on the Note and lacked any interest under the Deed. *Id.* at 7-9. He also seeks to quiet title and requests an award of attorneys' fees. *Id.* at 9-10. Defendants removed the case to federal district court based on diversity jurisdiction and have now moved for summary judgment. (Doc. 1 at 4-6; Doc. 16).

## II.  MOTION FOR SUMMARY JUDGMENT

### A.     Applicable Law

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A party moving for summary judgment has the initial burden of  "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once

2

the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotes omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* (citation omitted). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party.  *Id.*

**B.     Arguments**

Defendants initially argue that Plaintiff lacks standing to challenge the assignment of the Note and Deed on the basis that it occurred after the Trust closed because he was neither a party to the PSA nor a third-party beneficiary.  (Doc. 16 at 12-13).  Even if Plaintiff could challenge the assignment, Defendants contend that any problem with the timing of the assignment would render the assignment voidable, not void.  *Id.* at 13.  Further, Defendants claim that Wells Fargo, as the servicer of the Note, is entitled to enforce the Note and conduct the foreclosure sale under the terms of the Note and applicable law. *Id.* at 14.  As such, Defendants assert that Plaintiff's request for declaratory relief must fail.  *Id.* at 14-16.

Additionally, Defendants contend that Plaintiff's claim for quiet title cannot succeed as a matter of law because they are entitled to foreclose and Plaintiff has not yet lost title to the property.  *Id.* at 16-17.  Defendants also allege that Plaintiff is not entitled to recover his attorneys' fees because he has no viable cause of action, but Defendants are entitled to their fees because the Note and Deed provide that the lender can recover reasonable attorneys' fees

incurred to enforce the Note and protect their interest in the property.  *Id.* at 17-21.

Defendants submitted an appendix with their summary judgment motion demonstrating the following:  In September 2004, Plaintiff executed a home equity Note in favor of Argent in the principal amount of $118,400.00 plus interest.  (Doc. 17-2 at 1-4).  On that same date, Plaintiff executed a Deed granting Argent a security interest in the property.  (Doc. 17-3 at 1-20).  Later that month, Argent assigned the Note, together with the liens against the property and all title held, to Ameriquest.  (Doc. 17-4 at 1-2).  In September 2011, Citi Residential Lending, Inc., acting as attorney-in-fact for Ameriquest, assigned all beneficial interest in the loan to U.S. Bank.  (Doc. 17-5 at 1-2).

Plaintiff opposes summary judgment, arguing that U.S. Bank is not entitled to foreclose on his property because it is not a lender pursuant to the Deed.  (Doc. 25 at 2, 10).  Plaintiff contends that the only possible holder of the Note is the Park Place Trust which, under the terms of the PSA, was required to purchase loans from Ameriquest and then pass them to the trustee, U.S. Bank.  *Id.* at 2-3, 5.  However, because the closing date of the Park Place Trust was November 2004, Plaintiff claims that any 2011 assignment of the Note from Ameriquest to the Trust was untimely.  *Id.* at 2-4, 6.  Plaintiff further asserts that if, as the evidence suggests, Ameriquest sold the Note and Deed directly to U.S. Bank as trustee without going through the Park Place Trust as depositor, the PSA's chain of title requirements were violated.  *Id.* at 5-6.  Plaintiff urges that if either the PSA closing date or chain of title requirements were violated, the 2011 assignment was void.[1]  *Id.* at 4-11.

---

[1] Plaintiff states that the assets, which purportedly included his Note were required to flow from Ameriquest to Park Place Securities, Inc. to the Defendant U.S. Bank as Trustee of the Trust.  Plaintiff notes that the summary judgment evidence indicates that Plaintiff's Note and

Plaintiff maintains that Texas law does not require him to be a party to the PSA to challenge either a void assignment or whether Defendants may invoke the power of sale under the Deed, and he alternatively argues that he has pleaded facts that show he is a third-party beneficiary of the PSA, thereby providing him standing to raise PSA-based claims. *Id.* at 16. Plaintiff further asserts that he has demonstrated his entitlement to declaratory relief and met the required elements of a quiet title claim. *Id.* at 17-20.

## C.     Authority to Foreclose

As an initial matter, Defendants' argument that Plaintiff lacks standing to challenge the assignment of the Note and Deed is precluded by recent authority. In *Reinagel v. Deutsche Bank Nat. Trust Co.*, 735 F.3d 220, 224 (5th Cir. 2013), the Court of Appeals for the Fifth Circuit held that homeowners do have standing to challenge the validity of the transactions by which a loan originator assigned the deed of trust and corresponding promissory note to another bank. In that same opinion, however, the appellate court rejected the homeowners' claim that the assignments were void because the PSA provided that no mortgages could be transferred into the bank's trust after October 2006, which was more than a year before the first assignment. 735 F.3d at 228.

The *Reinagel* court noted that the homeowners were not parties to the PSA, and they thus had no right to enforce its terms unless they were intended to be third-party beneficiaries of the PSA. *Id.* Even if the homeowners could prove such intent, however, the court concluded that any violation of the PSA could only be remedied by their filing a separate suit for breach of the PSA, not through voiding of the assignments at issue. *Id.* at 228 n.29 (stating that "a PSA is

---

Deed were transferred directly from Ameriquest to U.S. Bank as trustee, bypassing Park Place Securities in violation of the PSA. (Doc. 25 at 5-6).

executed to benefit the investors who buy securities backed up by the mortgage pool," and "[u]nsurprisingly, courts invariably deny mortgagors third-party status to enforce PSAs") (citations omitted); *see also Farkas v. GMAC Mortg., LLC*, 737 F.3d 338, 342 (holding that, without any evidence showing that a homeowner was an intended third-party beneficiary of a PSA, he lacked standing to enforce the terms of the PSA that governed the assignment of the mortgagor's note); *Colton v. U.S. Nat. Bank Ass'n.*, Case No. 3:12-CV-3584-D, 2013 WL 5903618, *1-3 (N.D. Tex. 2013) (Fitzwater, C.J.) (holding that a homeowner lacked standing as either a party or a third-party beneficiary to argue that the assignment of the note and deed did not follow the PSA's chain of title requirements).   Based on the above authority, Plaintiff cannot challenge Defendants' alleged failure to comply with the PSA's requirements.

**D.    Quiet Title**

To prevail on a suit to quiet title, a plaintiff must show that (1) he has an interest in a specific property; (2) title to the property is affected by a claim from the defendant; and (3) the defendant's claim, although facially valid, is invalid or unenforceable.  *Sadler v. Duvall*, 815 S.W.2d 285, 293 n.2 (Tex.App.–Texarkana 1991).  Moreover, as is most important to the issue here, the plaintiff in a quiet title action must recover on the strength of his own title, not on the weakness of the defendant's title.  *Fricks v. Hancock*, 45 S.W.3d 322, 327 (Tex.App.–Corpus Christi 2001).  In support of his quiet title claim, Plaintiff contends that the alleged problems with the assignment of the Note rendered Defendants' claim to the property invalid and unenforceable as void.  (Doc. 1-5 at 9; Doc. 25 at 17).  He attempts to demonstrate the strength of his title by relying on the warranty deed he acquired from the prior owner and recorded with the clerk of court.  (Doc. 25 at 17).

Recently, another Judge of this Court dismissed a similar quiet title action. *See Olaoye v. Wells Fargo Bank, N.A.*, Case No. 4:11-CV-772, 2012 WL 1082307, *4 (N.D. Tex. 2012) (Means, J.). In that case, the complaint was devoid of facts demonstrating that the plaintiff had superior title to the property, and the plaintiff made only a conclusory statement that he was the legal and equitable owner of the property. *Id.* Moreover, as in this case, the plaintiff's theory that the assignment of the note and deed of trust were not valid was meritless. *Id.* at *2, 4. As in *Olaoye*, Plaintiff here supports his quiet title claim with a conclusory assertion that he owns the property in question. Moreover, to the extent that Plaintiff contends Defendants' right to foreclose is unenforceable because the assignment to U.S. Bank violated the PSA, that argument lacks merit for the reasons previously discussed. *See Reinagel*, 735 F.3d at 228.

**D.    Declaratory Judgment**

Although Plaintiff originally filed suit in state court, now that it has been removed to federal court, his request for declaratory relief is converted into a request brought under the federal Declaratory Judgment Act. *Turner v. AmericaHomeKey, Inc.*, 2011 WL 3606688, *5 n.11 (N.D. Tex. 2011). That Act provides that any federal court may declare the rights and legal relations of any interested party. However, the availability of a declaratory judgment depends upon the existence of an underlying judicially remediable right. *Schilling v. Rogers*, 363 U.S. 666, 677 (1960). In this case, because Plaintiff's claims fail for the reasons stated above, he is not entitled to any relief under the Declaratory Judgment Act. Accordingly, Plaintiff's claims under that Act should be dismissed with prejudice.

**E.    Attorneys' Fees**

Plaintiff argues that Defendants are not entitled to attorneys' fees because (1) the

Declaratory Judgment Act does not provide for such an award; and (2) this case was not brought in connection with any collection effort on the Note or the prosecution of a foreclosure sale or eviction, so any provision for recovery of fees in the Deed is inapplicable.  (Doc. 25 at 20-21).

Plaintiff's argument about the Declaratory Judgment Act is immaterial because the collection of attorneys' fees is provided for in the Deed.  Paragraph 9 of the Deed provides that "if there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under [the Deed] . . . then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property."  (Doc. 17-3 at 7).  These actions can include "paying reasonable attorneys' fees to protect its interest in the Property and/or rights under the [Deed]," and any amounts so incurred "shall become additional debt of Borrower secured by" the Deed plus interest.  *Id.* at 8.  Under the plain language of the Deed, Defendants can recover their reasonable attorneys' fees because they are protecting their interest in the subject property by defending against Plaintiff's suit which seeks to avoid foreclosure.  *See In re Velazquez*, 660 F.3d 893, 895-96, 899 (5th Cir. 2011) (finding virtually identical language in a deed of trust to permit the recovery of attorneys' fees).  Accordingly, Defendants are entitled to recover their reasonable attorneys' fees incurred in defending this lawsuit.

Defendants have submitted the affidavit of lead counsel attesting to his firm's applicable hourly rates, the services rendered, and the fee amount that he believes to be reasonable for litigating this case as well as any future appeals that may follow.  (Doc. 17-9).  Plaintiff had the opportunity to object to counsel's calculations and rates, but did not do so.  At the Court's instruction, Defendants also submitted to the Court the billing statements supporting their request for fees.  (Doc. 31).  After reviewing Defendants' submissions, the record, and the applicable

law, the undersigned recommends that the Court **GRANT** in part and **DENY** in part Defendants' request for attorneys' fees.

In its request for fees, Defendants seek a total of $18,255.50, which is presumably the amount of fees due as of September 6, 2013, the date they moved for summary judgment.[2] (Doc. 17-9 at 3). Defendants also requests $60,000 in attorneys' fees in the event appeal is sought to the Fifth Circuit and Supreme Court. *Id.* at 4. The Court will first address whether the $18,255.50 requested for current attorneys' fees is reasonable.

The record reflects that Defendants' counsel, Richard A. Illmer ("Mr. Illmer"), was chiefly responsible for this case and has been licensed by the State of Texas since 1986. *Id.* at 2. His hourly rate is $395. *Id.* Mr. Illmer was assisted by associate Chalon Clark-Thomas ("Ms. Clark-Thomas"), whose hourly rate is $275, and paralegals Julie Graham and Melissa Mastin, whose hourly rates are $190. *Id.* The Court finds that the hourly rates for Mr. Illmer and Ms. Clark-Thomas are within the range of the usual and customary rate charged by attorneys in the Dallas legal community with similar ability, competence, experience, and skill as that of defense counsel for the services performed in cases of this nature. Indeed, the Court previously has approved of these rates for these particular attorneys in a similar case. *See Stevenson v. Wells Fargo*, Case No. 3:12-CV-03032-L-BK, Doc. 28 at 2. The Court further finds that with respect to the reasonableness of the paralegals' hourly rates, although the rate is on the "high side" for the Northern District of Texas, it is within the range of reasonableness. This Court previously has approved of the $190 hourly rate for paralegals in a similar case. *See id.*; *see also Fashina v.*

---

[2] Defendants have not moved to supplement their fee request since that time although they have incurred additional fees. *See* Doc. 31-1 at 20 (reflecting the total bill of $25,056.00 as of January 17, 2014).

*Fed. Home Loan Mortg. Co.*, Case No. 3:12-CV-822-N-BK, 2013 WL 5300652, *2 (N.D. Tex. 2013) (finding $180 hourly billable rate for paralegal to be reasonable). Accordingly, the Court finds that the hourly rates of $395, $275, and $190 are reasonable.

As reflected in the documentation that defense counsel submitted, and as Mr. Illmer states in his affidavit, counsel reviewed Plaintiff's original pleadings and loan documents, prepared an Answer on behalf of Defendants, investigated Plaintiff's claims, removed the case from state to federal court, prepared a Joint Conference Report and a Joint Settlement Status Report, prepared an expert disclosure report, responded to and propounded discovery at some length, and conducted legal research for and prepared a summary judgment motion and supporting documentation. (Doc. 17-9 at 3; Doc. 31-1 at 1-17). In light of the record, Mr. Illmer's affidavit, and the Court's familiarity both with the work performed by Defendants' counsel in this case as reflected in the record and billing statements and the approximate amount of time that it would take to perform such work, the Court concludes that the time and money expended were reasonable. The undersigned thus recommends that Defendants motion be **GRANTED** to the extent that they should be awarded attorneys' fees in the requested amount of $18,255.50. Nevertheless, the Court should decline to address the issue of attorney's fees on appeal because it is premature, and there is insufficient information to warrant such relief. Accordingly, Defendants' motion should be **DENIED** in that respect.

### III.  CONCLUSION

For the reasons stated above, Defendants' *Motion for Summary Judgment* (Doc. 16) should be **GRANTED**, Defendants' request for attorneys' fees should be **GRANTED IN PART**, and this case should be **DISMISSED WITH PREJUDICE**.

**SO RECOMMENDED** on January 27, 2014.

RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

11